1
2
3
4
5
6                UNITED STATES DISTRICT COURT
7               CENTRAL DISTRICT OF CALIFORNIA
8                      WESTERN DIVISION
9

10  JAN L. RICHARDS,                    )    No. SACV 06-616 FFM
                                        )
11                   Plaintiff,         )    MEMORANDUM DECISION AND
          v.                            )    ORDER
12                                      )
    MICHAEL J. ASTRUE,[1]               )
13  Commissioner of Social Security,    )
                                        )
14                   Defendant.         )
                                        )
15  _____   )

16          On July 18, 2006, plaintiff Jan L. Richards brought this action seeking to

17  overturn the decision of the Commissioner of the Social Security Administration[1]

18  denying her application for Supplemental Security Income and Disability Insurance

19  Benefits.  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of

20  the undersigned United States Magistrate Judge.  Pursuant to the Court's July 20, 2006

21  case management order, on March 20, 2007, the parties filed a Joint Stipulation

22  detailing each party's arguments and authorities.  The Court has reviewed the

23  administrative record ("AR"), filed by defendant on February 1, 2007, and the Joint

24
25
26  _____
27          [1]      Michael J. Astrue became Commissioner of the Social Security
    Administration on February 12, 2007 and is hereby substituted as defendant pursuant
28  to Federal Rule of Civil Procedure 25(d).

Stipulation ("JS").  For the reasons stated below, the decision of the Commissioner is reversed and remanded for further proceedings.

## PROCEDURAL HISTORY

On July 6, 2004, plaintiff filed an application for Supplemental Security Income and Disability Insurance Benefits.  The application was denied initially and upon reconsideration.  Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ").  ALJ Keith Dietterle held a hearing on March 14, 2006.  Plaintiff appeared with counsel and testified at the hearing.  On March 24, 2006, the ALJ issued a decision denying benefits.  Plaintiff sought review of this decision before the Appeals Council, which denied the request for review on May 19, 2006.

Plaintiff commenced the instant action on July 18, 2006.

## CONTENTIONS

Plaintiff raises three issues in this action:

1.	Whether the ALJ properly considered the opinion of disability from the treating physician.

2.	Whether the ALJ properly rated plaintiff's mental impairments.

3.	Whether the ALJ made proper credibility findings.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (internal quotation marks omitted); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is

1  "such relevant evidence as a reasonable mind might accept as adequate to support a

2  conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks omitted).  This

3  Court must review the record as a whole and consider adverse as well as supporting

4  evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986).  Where evidence is

5  susceptible to more than one rational interpretation, the Commissioner's decision must

6  be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

7

8                                      **DISCUSSION**

9  A.   <u>Issue One</u>.

10       In order to meet the statutory definition of "disabled," a claimant must satisfy

11  both medical and vocational components.  42 U.S.C. § 1382c; *Frost v. Barnhart*, 314

12  F.3d 359, 365 (9th Cir. 2002).  To satisfy the medical component, the claimant must

13  prove an inability to "engage in any substantial gainful activity by reason of any

14  medically determinable physical or mental impairment . . . which has lasted or can be

15  expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

16  1382c(a)(3)(A).  To satisfy the vocational component, a claimant must prove that his

17  or her impairments "are of such severity that [the claimant] is not only unable to do his

18  previous work but cannot, considering his age, education, and work experience, engage

19  in any other kind of substantial gainful work which exists in the national economy . . .

20  ." *Id.* at § 1382c(a)(3)(B).

21       In evaluating physicians' opinions as to a claimant's medical impairments, the

22  case law and regulations distinguish among three types of physicians:  (1) those who

23  treat the claimant (treating physicians); (2) those who examine but do not treat the

24  claimant (examining physicians); and (3) those who neither treat nor examine the

25  claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

26  1995), *limited on other grounds*, *Salee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see*

27  *also* 20 C.F.R. §§ 404.1502, 416.927(d).  As a general rule, more weight should be

28  given to the opinion of a treating source than to the opinion of doctors who do not treat

1    the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R.

2    § 416.927(d)(2).  An ALJ may not reject the uncontradicted opinion of a treating

3    doctor without providing "clear and convincing reasons" supported by substantial

4    evidence in the record.  *Lester*, 81 F.3d at 830 (internal quotation marks omitted).

5    Even if the treating doctor's opinion is contradicted by another doctor, an ALJ may not

6    reject the opinion without providing "specific and legitimate reasons" supported by

7    substantial evidence in the record for so doing.  *Id.* (internal quotation marks omitted).

8    The ALJ can meet this burden "by setting out a detailed and thorough summary of the

9    facts and conflicting clinical evidence, stating his interpretation thereof, and making

10   findings."  *Magallanes v. Bowen*, 881 F.2d at 747, 751 (9th Cir. 1989) (internal

11   quotation marks omitted).

12          In addition to providing medical opinions, physicians also provide opinions

13   concerning the ultimate issue of disability, *i.e.*, opinions about whether a claimant is

14   capable of any work, given his or her limitations due to the impairments at issue.

15   *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  An ALJ may reject a

16   treating physician's uncontradicted opinion on the ultimate issue of disability only

17   with "clear and convincing" reasons supported by substantial evidence in the record.

18   *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala*, 10

19   F.3d 678, 680 (9th Cir. 1993)) (internal quotation marks omitted).  If the treating

20   physician's opinion on the issue of disability is controverted, the ALJ must still

21   provide "specific and legitimate" reasons supported by substantial evidence in the

22   record in order to reject the treating physician's opinion.  *Id.*; *Holohan*, 246 F.3d at

23   1202-03.

24          On August 22, 2003, Jeremiah Umakanthan, M.D., wrote a letter on behalf of

25   plaintiff.  Dr. Umakanthan stated that he had been providing plaintiff with psychiatric

26   care for more than a year.  He stated that plaintiff had a history of depression and

27   anxiety and that she had been diagnosed with major depressive disorder, anxiety

28   disorder, and post-traumatic stress disorder.  (AR 135.)  On November 23, 2003, Dr.

1   Umakanthan wrote another letter on plaintiff's behalf.  In that second letter, Dr.

2   Umakanthan stated that plaintiff had been diagnosed with major depression and opined

3   that she was not "medically stable" enough to return to full-time work.  (AR 130.)  Dr.

4   Umakanthan did not opine as to specific limitations on plaintiff's functioning.

5   However, in rejecting Dr. Umakanthan's conclusion that plaintiff was disabled, the

6   ALJ only stated, "The undersigned gives little weight to conclusions of disability as

7   that determination is reserved to the ALJ (20 C.F.R. 1527(e) and 416.927(e))."  (AR

8   12.)  Plaintiff contends that this lacked sufficient specificity.  (JS 3-4.)  The Court

9   agrees.

10         Dr. Umakanthan's opinion that plaintiff is disabled because of major depression

11   is contradicted by other opinions in the record.  That is, the non-examining medical

12   expert, Michael Perrotti, Ph.D., testified that plaintiff could work in a habituated

13   setting, with no intense social interaction, no heights, no supervision of the safety

14   operations of others, no multi-tasking, and no tasks exceeding three steps.  (AR 240-

15   42.)  In addition, the vocational expert, Kelly Winn-Boaitey, testified that assuming the

16   residual functioning capacity described above and plaintiff's age, education and

17   experience, there was substantial gainful work which existed in the national economy

18   and that plaintiff could perform (*viz.*, positions as office helper, bench assembler, and

19   packager).  (AR 243-45.)[2]  Thus, the ALJ was required to state "specific and legitimate

20   reasons" for rejecting Dr. Umakanthan's opinion.  He did not do so.  It is not enough

21   for an ALJ's opinion to review the medical evidence and summarily reject the

22   conclusions of the claimant's physicians.  Rather, the ALJ must set forth his own

23   ─────────────────

24         [2]      The Court notes that Winn-Boaitey also testified that in the case of an
      individual who had the same age, education, and experience as plaintiff, but who could
25   not sustain an eight-hour weekday or 40-hour work week because of anxiety
      depression, and fear, there would be no jobs in the relevant labor market.  (AR 245.)
26   Because the Court remands for further consideration of plaintiff's testimony as to the
      severity of her symptoms, the Court cannot conclude that, in failing to provide
27   "specific and legitimate reasons" for rejecting Dr. Umakanthan's opinion, the ALJ's
28   error was "harmless."  *Cf. Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

interpretations of the evidence and give *specific* reasons why those interpretations, and not the physician's, are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, the ALJ's blanket statement that he disregarded Dr. Umakanthan's opinion of disability because the opinion of disability is reserved to the ALJ was insufficient. *See Embrey*, 849 F.2d at 422. Accordingly, the matter requires remand for reconsideration of Dr. Umakanthan's disability opinion. If the ALJ rejects Dr. Umakanthan's opinion, he must state specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Umakanthan's disability opinion.

B.    Issue Two.

In the decision, the ALJ found that plaintiff had "affective and anxiety related disorders" that were "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c). (AR 15.) Plaintiff contends that the ALJ was required to specifically rate her degrees of limitation in activities of daily living, social functioning, and concentration, persistence or pace. Plaintiff contends that the ALJ was also required to rate her episodes of decompensation and set forth all such ratings in the written decision. (JS at 6.)

Plaintiff is correct. Where a disability benefits claimant claims a mental impairment, the ALJ is required to assess the severity of the impairment by following specific steps set forth in the Social Security regulations. 20 C.F.R. § 404.1520a(a). The ALJ must assess the claimant's degree of functional limitation (*i.e.*, the degree to which the impairment interferes with the ability to function) in activities of daily living; social functioning; and concentration, persistence, or pace, and rate them using a five-point scale ("[n]one, mild, moderate, marked, and extreme"). *Id.* at § 404.1520a(c)(2)-(4). The ALJ must also rate the claimant's episodes of decompensation and rate them according to a four-point scale ("[n]one, one or two, three, four or more"). *Id.* at § 404.1520a(c)(4); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1077-78 (9th Cir. 1997); *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1087 (N.D. Cal. 2001). The ALJ cannot satisfy this requirement, as the ALJ did here, by generally discussing the functional impact of the claimant's mental impairments. *Mersman*, 161

F. Supp. 2d at 1087.  Accordingly, the matter requires remand so that the ALJ may rate plaintiff's degrees of functional limitation and episodes of decompensation in accordance with 20 C.F.R. § 404.1520a(c).

C.    Issue Three.

During the administrative hearing, plaintiff was asked if she had difficulty concentrating.  Plaintiff responded, "Yes, I do."  (AR 218.)  Plaintiff testified that she took antidepressant and anti-anxiety medications.  (*Id.*)  Plaintiff further testified that she sometimes had difficulty driving because she got dizzy (AR 219) and that she had difficulty understanding and remembering what she read (AR 221).  Plaintiff asserted that when her friends had a conversation, she couldn't follow the conversation because her mind wandered.  (AR 222.)  Plaintiff described problems with concentrating, following instructions, and testified that she suffered from anxiety and insomnia.  (AR 225.)  Plaintiff testified that she felt sick to her stomach "all the time" (AR 226) and that she hurt "all over."  (AR 228.)  Plaintiff asserted that she had daily crying spells with no specific trigger (AR 229-30) and that she had panic attacks and thoughts of suicide (AR 234).

The ALJ found that plaintiff had "affective and anxiety related disorders" that were considered "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c).  (AR 14, 15.)  However, the ALJ rejected plaintiff's subjective symptoms as follows:

> Nonetheless, the claimant maintains that she is unable to
> work due to her alleged subjective symptoms.  However, the
> undersigned notes the claimant has not established a
> medically determinable impairment which would reasonably
> expected to produce such limitations.  Indeed, the record
> shows substantial improvement with appropriate treatment to
> the point where the consultive examination was essentially
> normal.  Moreover, the claimant reported taking care of all
> her own activities of daily living without any apparent

1                      difficulties.  At the hearing, the claimant's thoughts did not

2                      seem to wander and all questions were answered alertly and

3                      appropriately.  There is no credible evidence of regular use of

4                      strong medication to alleviate her symptoms that would

5                      significantly impair the claimant's ability to do basic work

6                      activities.  There was no evidence in the medical record of

7                      any significant side effects.  Accordingly, the undersigned

8                      concludes the claimant's testimony and evidence, although

9                      appearing sincere, is not fully credible regarding the extent,

10                      intensity and duration of the alleged subjective symptoms

11                      and functional limitations and restrictions.

12 (AR 13-14.)  The ALJ did not describe plaintiff's subjective symptoms or discuss them

13 in any detail.  (*See id.*)

14       Plaintiff contends that the ALJ erred by (1) failing to specify which portions of

15 plaintiff's testimony he found not credible and (2) failing to provide "clear and

16 convincing" reasons for rejecting such testimony.  (JS at 10-11.)  The Court agrees.

17         1.      <u>The ALJ's finding that plaintiff did not have an impairment that would</u>

18                  <u>produce the claimed symptoms was not supported by substantial evidence</u>.

19       As a preliminary matter, the Court notes that once a claimant produces medical

20 evidence of an underlying impairment, the ALJ may not discredit the claimant's

21 testimony as to the severity of the symptoms merely because they are unsupported by

22 objective medical evidence. *Reddick*, 157 F.3d at 722.  The ALJ reasoned that plaintiff

23 had not proved that she had any impairment that would produce her claimed

24 symptoms.  (AR 13.)  This conclusion was not supported by substantial evidence in the

25 record.

26 / / /

27       The ALJ acknowledged that plaintiff's medical records from the San Bernardino

28 County Department of Behavioral Health showed that in July of 2002, plaintiff was

1  diagnosed with "major depressive disorder, single episode, moderate; anxiety disorder,

2  NOS[3], post traumatic stress disorder, chronic." (AR 12; *see also* AR 163.)  The ALJ

3  also acknowledged that in November of 2003, Dr. Umakanthan opined that plaintiff

4  had major depression.  (AR 12; *see also* AR 130.)  The ALJ also acknowledged that in

5  September of 2004, Dr. Harrell Reznick, a psychologist who examined plaintiff,

6  diagnosed plaintiff with depressive disorder, NOS.  (AR 13; *see also* AR 177.)

7       However, in finding that plaintiff had "affective and anxiety related disorders"

8  that were considered "severe," the ALJ apparently relied on the testimony of the

9  medical expert, Dr. Perrotti.  Dr. Perrotti did not examine or treat plaintiff.  Based on a

10  review of plaintiff's medical record and her testimony at the hearing, Dr. Perrotti

11  concluded that plaintiff had "12.04, 12.06," which the ALJ interpreted as "affective

12  disorder and anxiety related disorders," respectively.  (AR 240.)

13       The ALJ and Dr. Perrotti were apparently referring to 20 C.F.R., Part 404,

14  Subpart P, Appendix 1 (the "Listing of Impairments"), which gives the requirements

15  that an individual must meet in order to be considered "disabled" without proceeding

16  to steps four and five of the disability analysis.[4]  20 C.F.R. § 404.1520; *Holohan*, 246

17  F.3d at 1203.  Section 12.04 of the Listing of Impairments addresses the requirements

18  for "affective disorders," which are "characterized a disturbance of mood,

19

20       [3]      "NOS" means "not otherwise specified."  *See* American Psychiatric

21  Association, Diagnostic and Statistical Manual of Mental Disorders 484 (4th ed., text

   rev., 2000) ("DSM-IV").

22

23       [4]      The Commissioner follows a five-step sequential process for determining

   whether a claimant is "disabled." 20 C.F.R. § 404.1520.  Step three examines whether

24  the claimant's impairment or combination of impairments meets or equals an

25  impairment listed in 20 C.F.R., Part 404, Subpart P , Appendix1.  If so, the claimant is

   automatically deemed disabled. If not, the Commissioner proceeds to step four.  Step

26  four entails a determination of whether the claimant is capable of performing her past

27  work.  If so, she is not disabled. If not, the Commissioner proceeds to step five.  Step

   five asks whether the claimant has the residual functional capacity to perform any

28  other substantial gainful activity in the national economy.  If not, the claimant is

   disabled.  20 C.F.R. § 404.1520.

accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Section 12.06 lists the requirements for anxiety-related disorders. Listing 12.06 states, "In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms." *Id.* at § 12.06. Although the ALJ accepted Dr. Perrotti's testimony that plaintiff's disorders did not "meet or equal" the listed impairments (AR 240-41), he did find that plaintiff's disorders were "severe" (AR 14, 15).

In sum, it is unclear from the ALJ's opinion whether he understood "affective disorder and anxiety related disorders" to be roughly equivalent to plaintiff's previous diagnoses of major depression; depressive disorder, NOS; and anxiety disorder, NOS. If he did, his conclusion that plaintiff's impairments would *not* produce her claimed symptoms – in pertinent part, difficulty concentrating, insomnia, daily crying spells, thoughts of suicide, dizziness, and panic attacks – was clearly not supported by substantial evidence. On the contrary, such symptoms are hallmarks of major depression, depressive disorder, NOS, and anxiety disorder, NOS. *See* DSM-IV, 349-56 (major depressive episode), 369-76 (major depressive disorder), 381-82 (depressive disorder, NOS), 484 (anxiety disorder, NOS).

Furthermore, the Listing of Impairments' definitions for "affective disorder" and "anxiety related disorders" require that the claimant present with symptoms of "depression" and "anxiety," respectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. Thus, even if such diagnoses are somehow distinct from major

depression; depressive disorder, NOS; and anxiety disorder, NOS, they apparently still constitute impairments that would produce plaintiff's claimed symptoms.[5]

_____

[5]     The Court further notes that if the ALJ understood "affective disorder and anxiety related disorders" to differ from plaintiff's previous diagnoses, he was required to provide "specific and legitimate reasons" for rejecting the medical opinions of the

(continued...)

1    2.    <u>The ALJ failed to provide "clear and convincing" reasons for rejecting</u>

2        <u>plaintiff's description of her symptoms</u>.

3        As set forth above, once a claimant produces medical evidence of an underlying

4    impairment, the ALJ may not discredit the claimant's testimony as to the severity of

5    the symptoms merely because they are unsupported by objective medical evidence.

6    *Reddick*, 157 F.3d at 722.  Unless there is affirmative evidence showing that the

7    claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must

8    be "clear and convincing."  *Id.*; *Holohan*, 246 F.3d at 1208. The ALJ must specifically

9    identify the testimony she or he finds not to be credible and must explain what

10    evidence undermines the testimony.  *Holohan*, 246 F.3d at 1208.  The evidence upon

11    which the ALJ relies must be substantial.  *Id.*

12        The ALJ's holding thus fails on several grounds.  First, the ALJ did not point to

13    affirmative evidence showing that claimant was malingering, and thus could not avoid

14    the requirement that he provide "clear and convincing" reasons for rejecting plaintiff's

15    testimony.  (AR 13-14.)  Second, the ALJ did not specifically identify the testimony he

16    found not to be credible, nor did he explain what evidence undermined that specific

17    testimony by plaintiff.  He merely made reference to plaintiff's "subjective

18    symptoms," without setting forth what those symptoms were and what evidence

19    contradicted them.  (*Id*.)

20        Third, the evidence that the ALJ did adduce in support of his rejection of

21    plaintiff's testimony was not "substantial."  His conclusion that the consulting

22    examination was "essentially normal" is contradicted by the record.  That is, Dr.

23    Reznick diagnosed plaintiff with depressive disorder, NOS, and opined that plaintiff

24    "presented with signs and symptoms of depression . . . " – hardly a "normal"

25    examination result.  (AR 177.)

26

27        [5](...continued)

28    treating and examining physicians in favor of the non-examining physician's.  *Embrey*,
849 F.2d at 422.  He did not do so.

Furthermore, while it is true that Dr. Reznick opined that plaintiff's depressive syndrome "would not prevent her from performing a wide variety of work tasks in an acceptable manner and on a consistent basis" (*id.*), that opinion was contradicted by the opinion of her treating physician, Dr. Umakanthan.  Dr. Umakanthan asserted that plaintiff had "major depression" that was so severe, it would prevent her from holding a job.  (AR 130.)  As the ALJ did not provide "specific and legitimate reasons" for rejecting Dr. Umakanthan's opinion, Dr. Umakanthan's opinion as to the extent of plaintiff's mental impairment, not Dr. Reznick's, was entitled to controlling weight.[6]

In addition, plaintiff reported at the consulting examination that she had, *inter alia*, continual crying episodes; extreme sadness; routine lapses in attention, concentration, and memory; and periodic panic attacks.  (AR 171.)  She further reported that her past was "eating [her] alive" and that she was constantly bombarded with troubling thoughts that caused her despair.  (AR 172.)  Thus, although she did report taking care of daily tasks, personal hygiene, and financial concerns (AR 174), it

is not accurate for the ALJ to state that she reported performing those tasks "without any apparent difficulties" (AR 13).

Finally, although there was evidence that there were no medication side-effects

---

[6]    Nor is it clear how the ALJ concluded that plaintiff showed "substantial improvement with appropriate treatment."  (*See* AR 13-14.)  Although a discharge summary issued by the San Bernardino County Department of Behavioral Health indicates that plaintiff showed "Significant Improvement" overall between July of 2002 and December of 2003 (AR 128), Dr. Umakanthan's notes do not indicate that plaintiff's mood improved significantly over the course of his treatment of her (*see e.g.*, AR 147 (noting plaintiff's mood at "4-7/10" in April of 2003), AR 134 (noting "no change" in plaintiff's depression and anxiety), AR 131 (noting plaintiff's mood at "2-6/10" in November of 2003)).  Furthermore, "improvement" must be placed in context with plaintiff's overall diagnostic picture.  "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in the workplace."  *Holohan*, 246 F.3d at 1205.

1  that would prevent plaintiff from carrying out the duties of full-time work (*see*, *e.g.*,

2  AR 218), this was not sufficient evidence to discredit plaintiff's complaints of

3  symptoms, such as daily crying spells, that stemmed directly from her claimed

4  impairments.  The Court cannot affirm the ALJ's "conclusion simply by isolating a

5  specific quantum of supporting evidence."  *Day v. Weinberger*, 522 F.2d 1154, 1156

6  (9th Cir. 1975).

7       Thus, remand is required for reconsideration of plaintiff's testimony as to the

8  severity of her symptoms.  If the ALJ again rejects plaintiff's testimony, he must set

9  forth "clear and convincing" reasons, supported by substantial evidence, for so doing.

10  *Holohan*, 246 F.3d at 1208.  Furthermore, he must specifically identify the testimony

11  he finds not to be credible and explain what evidence undermines the testimony.  *Id.*

12       A vocational expert should again be called if the ALJ does not reject Dr.

13  Umakanthan's opinion of disability and plaintiff's testimony as to the severity of her

14  symptoms.

15

16                                **CONCLUSION**

17       Therefore, the matter requires remand for further proceedings.  The judgement

18  of the Commissioner is accordingly reversed and the matter is remanded pursuant to

19  sentence 4 of 42 U.S.C. § 405(g) for further proceedings.

20       **IT IS SO ORDERED.**

21

22  DATED:   February 21, 2008

23

24                              / s / FREDERICK F. MUMM

25                              FREDERICK F. MUMM
                                United States Magistrate Judge

26

27

28

13